AMERICAN POSTAL WORKERS
UNION, AFL–CIO, et al.,
Plaintiffs,

v.

UNITED STATES POSTAL SERVICE,
et al., Defendants.

Civ. A. No. 85–2154 WBB.

United States District Court,
District of Columbia.

Nov. 27, 1989.

Susan Lynne Catler, O'Donnell, Schwartz & Anderson, Washington, D.C., for plaintiffs.

Rebecca Lynn Ross, Charles Lanier Hall, Linda A. Halpern, U.S. Atty's. Office, Washington, D.C., for defendants.

## MEMORANDUM

BRYANT, Senior District Judge.

The parties are before the court on defendants' motion for reconsideration of that portion of the court's memorandum and order of July 10, 1989 denying defendants' motion to dismiss, or in the alternative for summary judgment, plaintiffs' claim for breach of Article 2.1 of the parties' collective bargaining agreement. For the reasons discussed herein, the court grants defendants' motion, vacates that part of its July 10, 1989 memorandum and order concerning Article 2.1 of the parties' collective bargaining agreement and grants defendants' motion for summary judgment on plaintiffs' claim for breach of Article 2.1 of the collective bargaining agreement. As the court's memorandum and order of July 10, 1989 granted defendants' motion to dismiss or for summary judgment on all of the other claims in this lawsuit, the instant memorandum and order resolves the only remaining claim in this lawsuit.

Plaintiffs are the American Postal Workers Union, the exclusive bargaining representative of postal clerks employed by the United States Postal Service, and four individuals who were employed as postal clerks. Defendants are the United States Postal Service and the United States. The American Postal Workers Union and the Postal Service entered into two collective bargaining agreements that are relevant to this lawsuit: one covering the period from July 21, 1981 through July 20, 1984 (the "1981 National Agreement") and the second covering the period from December 24, 1984 through 1987, unless otherwise provided (the "1984 National Agreement").

The 1981 National Agreement provides in Article 2.1 that

The Employer and the Unions agree that there shall be no discrimination by the Employer or the Unions against employees because of race, color, creed, religion, national origin, sex, age, or marital status or because of a physical handicap with respect to a position the duties of which can be performed efficiently by an individual with such a physical handicap without danger to the health or safety of the physically handicapped person or to others.

Article 2.1 of the 1984 National Agreement provides that

The Employer and the Unions agree that there shall be no discrimination by the Employer of the Unions against employees because of race, color, creed, religion, national origin, sex, age, or marital status.

In addition, consistent with the other provisions of this Agreement, there shall be no unlawful discrimination against handicapped employees, as prohibited by the Rehabilitation Act.

Plaintiffs allege that Article 2.1 was breached by the Postal Service when four Postal Service employees were discharged on the basis of handicap during the first 90 days of employment after experiencing work-related injuries. Plaintiffs have brought suit under the Postal Reorganization Act, 39 U.S.C. § 1208(b), which provides that

suits for violations of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy.

Both collective bargaining agreements contain a broadly worded grievance and arbitration procedure. In both, grievance is defined as

a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment. A grievance shall include, but is not limited to, the complaint of an employee or of the Unions which involves the interpretation, application of, or compliance with the provisions of this Agreement or any local Memorandum of Understanding not in conflict with this Agreement.

Thus, disputes or complaints involving the interpretation of any article of the collective bargaining agreement fall within the scope of the parties' grievance and arbitration procedure. Both agreements provide in Article 16 that

*No employee may be disciplined or discharged except for just cause* such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. *Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in reinstatement and restitution, including back pay.* [Emphasis added.]

Further, both agreements provide in Article 2.3 that grievances concerning Article 2.1, the non-discrimination clause, are subject to the grievance procedure and Article 2.3 spells out the procedures for the filing of such grievances. Thus, a claim by an employee that she was discharged in violation of the agreement's non-discrimination clause clearly falls within the scope of the

parties' grievance and arbitration procedure.

■ It is axiomatic that employees must avail themselves of grievance and arbitration procedures provided for in a collective bargaining agreement before filing suit for breach of the collective bargaining agreement or before filing suit on a claim which requires the court to interpret a collective bargaining agreement. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S.Ct. 1904, 1912, 85 L.Ed.2d 206 (1985). Thus, as a general matter Postal Service employees who wished to challenge their discharges as a violation of the collective bargaining agreement's non-discrimination clause would have to grieve and arbitrate their discharges prior to bringing their claims in federal district court for breach of the collective bargaining agreement.

The individual plaintiffs in this case were discharged within the first 90 days of their employment. Article 12.1 of both agreements provides that "the probationary period for a new employee shall be ninety (90) calendar days." Thus the individual plaintiffs were discharged during the probationary period. Article 12.1 of both agreements provides that

> The Employer shall have the right to separate from its employ any probationary employee at any time during the probationary period and these probationary employees shall not be permitted access to the grievance procedure in relation thereto.

Thus under the terms of both agreements, probationary employees do not have the right to grieve and arbitrate their discharges, even if they wish to allege that their discharges were in violation of the agreement's non-discrimination clause. The arbitrator who arbitrated the grievances of plaintiffs Rand and Comstock so held. Attachment E to Declaration of Sherry S. Barber, Defendants' First Motion to Dismiss or in the Alternative for Summary Judgment, at 11, 13.

The question before the court is whether probationary employees of the Postal Service who allege that they were discharged on the basis of handicap may bring claims for breach of the non-discrimination clause of the collective bargaining agreement under 39 U.S.C. § 1208(b), when these employees are not entitled to grieve and arbitrate these claims. Phrased differently, the question is whether the non-discrimination clause in the parties' collective bargaining agreement creates a contractual right independent of the agreement's grievance and arbitration procedure such that plaintiffs, who have no right to grieve and arbitrate their claims of discriminatory discharge can nonetheless sue for breach of the non-discrimination clause.

■ The court concludes that the parties' collective bargaining agreement does not permit probationary employees to sue under 39 U.S.C. § 1208(b) for breach of the agreement's non-discrimination clause. The collective bargaining agreement, when taken as a whole, evidences no intent by the parties to create an independent contractual right between the Union or employees and the Postal Service in the non-discrimination clause such that the Union or employees could sue for breach of this provision independent of the agreement's grievance and arbitration procedure. Rather, the agreement's grievance and arbitration clause is sufficiently broad to require the grievance and arbitration of any claim arising under any provision of the collective bargaining agreement, including an alleged breach of the non-discrimination clause. In the context of such a scheme, the fact that probationary employees are prohibited in Article 2.1 from challenging their discharges through the grievance and arbitration procedure suggests that the parties anticipated that discharges of probationary employees based on alleged discrimination would not be subject to challenge in a lawsuit for breach of the collective bargaining agreement.

Further, the text and structure of Article 2 itself suggest that the parties did not intend the non-discrimination clause to create a contractual right independent of the

grievance and arbitration procedure. Article 2 of both agreements contains three paragraphs or subclauses. Article 2.1 contains the nondiscrimination clause. It is entitled "Statement of Principle." Article 2.2 describes the formation of committees made up of representatives of the Union and the Postal Service to develop proposals on issues affecting minorities and to review plans for Postal Service facilities. Article 2.3 specifies the procedure for bringing grievances "arising under this Article." Thus Article 2 explicitly provides that complaints of discrimination shall be raised through the grievance procedure and mentions no other mechanism for redressing violations of the article. Moreover, the non-discrimination clause is entitled "Statement of Principle," suggesting that the policy itself is not a source of rights independent of the grievance and arbitration procedure.

Plaintiffs cannot maintain their cause of action for breach of Article 2.1 for another reason. The conduct that plaintiffs allege violated Article 2.1 is not simply conduct that the parties privately agreed would not be permissible in their dealings with one another. Rather, the conduct at issue in this case that allegedly violates Article 2.1 is conduct that also allegedly violates the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. Indeed, the non-discrimination clause of the 1984 National Agreement explicitly mentions the Rehabilitation Act. Postal Service employees are clearly covered by the Rehabilitation Act. 29 C.F.R. § 1613.201. United States Postal Service Employee and Labor Relations Manual 675.1.

In 1978, the Rehabilitation Act was amended to provide a private cause of action for federal employees and to make the statutory remedies and administrative procedures of § 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, applicable to federal employees bringing claims under the Rehabilitation Act. 29 U.S.C. § 794a(a)(1); Pub.L. No. 95–602, Title I § 120, 92 Stat. 2982, Nov. 6, 1978. Two years before this amendment was enacted, the Supreme Court held in *Brown v. General Services Administration*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976), that the remedies and procedures outlined in § 717 of Title VII are the exclusive remedy for claims of discrimination by federal employees. In *Shirey v. Devine*, 670 F.2d 1188, 1191 n. 7 (D.C.Cir.1982), this circuit expressed the view that the incorporation of § 717 of Title VII into the Rehabilitation Act provided a strong argument that the remedies provided in the Rehabilitation Act are also exclusive.

▮ Plaintiffs seek in their claim for breach of Article 2.1 to proceed directly into court with their claims of handicap discrimination in federal employment using a statute other than the Rehabilitation Act and without availing themselves of any of the administrative procedures required under the Rehabilitation Act. The court is confident that this route into federal court to pursue claims of handicap discrimination, without prior exhaustion of administrative remedies contained in the statutory scheme and supporting regulations, is not permissible under the Rehabilitation Act and was not anticipated by the parties when they negotiated the collective bargaining agreements.

The court is aware that Congress and the Equal Employment Opportunity Commission permit some deviation from the administrative exhaustion requirements contained in § 717 of Title VII before federal employees can sue for handicap discrimination. Under 5 U.S.C. § 7121(d), federal employees covered by chapter 23 of the Civil Service Reform Act of 1978 who wish to challenge prohibited personnel practices, such as handicap discrimination, can opt to challenge these practices either through the administrative mechanism provided under Title VII, the Rehabilitation Act or other substantive statute prohibiting the discrimination or through applicable grievance and arbitration procedures. The decision to proceed initially through grievance and arbitration prevents an employee from pursuing the same claim through agency administrative procedures, and vice-versa, although it does not alter the employee's right to a review of the grievance and

arbitration award under the procedures specified in the federal statute in question.

Likewise, regulations promulgated by the Civil Service Commission concerning procedures for filing complaints by federal employees of handicap and other discrimination, that are applicable to Postal Service employees, provide that discrimination claims against federal employers may be raised under a grievance procedure, if an existing collective bargaining agreement permits the grieving of such claims, instead of through EEOC procedures. The regulations also provide that the same claim cannot be considered under both grievance and arbitration procedures and EEOC procedures. 29 C.F.R. § 1613.219.

Title 5 U.S.C. § 7121(d) and 29 C.F.R. § 1613.219, however, simply make clear that federal employees covered by a grievance and arbitration procedure which permits the grievance and arbitration of discrimination complaints can opt to use those procedures at the initial stages of a discrimination complaint in lieu of the administrative procedures specified in the antidiscrimination statutes and regulations. There is no indication, however, that they permit an employee to forego all such procedures prior to bringing suit on a discrimination claim. To the contrary, 5 U.S.C. § 7121(d) and 29 C.F.R. § 1613.219 suggest that Congress and the EEOC intended to ensure that employees use some means of attempting to resolve discrimination claims through a structured, increasingly formalized internal agency mechanism prior to allowing a claim to proceed to court. It is precisely this stage of the process that has been side-stepped here, as plaintiffs have no access to the grievance and arbitration procedure to challenge discriminatory discharges, nor have they utilized the administrative procedures contained in the Rehabilitation Act by way of 29 U.S.C. § 794a(a)(1) and 29 C.F.R. § 1613.201 et seq. As the court concludes that Congress, the Postal Service, Civil Service Commission and the parties themselves did not anticipate such a route into federal court for claims of discrimination, the court grants defendants' motion for reconsideration and grants defendants' motion for summary judgment on plaintiffs' claim for breach of Article 2.1 of the collective bargaining agreement.