**James P. MEEHAN, Voluntary Administrator of the Estate of Michael J. Meehan, Plaintiff,**

**v.**

**UNITED STATES POSTAL SERVICE, et al., Defendants.**

**No. CV 90-0343.**

United States District Court, E.D. New York.

May 1, 1992.

Zimman & Chetkof by Cary D. Kessler, Jericho, N.Y., for plaintiff.

Andrew J. Maloney, U.S. Atty. by Warren Ausubel, Asst. U.S. Atty., Brooklyn, N.Y., for defendants.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

James Meehan ("plaintiff"), Administrator of the estate of Michael J. Meehan ("Meehan"), brings this action under the

Federal Group Life Insurance Act ("FEG-LI"), 5 U.S.C. § 8501 et seq., against the United States Postal Service, the United States of America and the United States Office of Personnel Management.[1] Plaintiff alleges that his son, Meehan, was wrongfully denied free life insurance from the United States Postal Service. Now before the Court are motions by both plaintiff and defendants for summary judgment pursuant to Federal Rules of Civil Procedure 56(a) and 56(b). For the reasons set forth below, defendants' motion is granted and plaintiff's motion is denied.

## I. BACKGROUND

The following material facts are not disputed by the parties. Meehan was employed by the United States Postal Service at its Mid–Island General Mail Facility, Hicksville, New York, from December 5, 1987 until the time of his death, March 12, 1989. On December 7, 1987, Meehan attended an orientation course where he was informed that Postal employees automatically receive free basic life insurance unless they sign a waiver regarding such coverage. He completed his orientation on December 8, 1987, with a grade of "satisfactory."

At the orientation course, each attendee received a Standard Form 2817 ("SF 2817") on which he was to indicate either the type of life insurance coverage he wanted or indicate his waiver of life insurance benefits. However, when Meehan filled out his SF 2817, he simultaneously elected and waived basic life insurance. As a result,

the SF 2817 could not be processed and on or about January 13, 1988, it was returned to him along with a blank SF 2817 and a memorandum explaining the problem and requesting that he clarify his choice on the new form.

On February 2, 1988, the Postal Service received from Meehan a properly completed SF 2817 in which he waived all life insurance coverage.[2] Meehan also returned the January 13, 1988 memorandum and printed on the bottom: "NO LIFE INSURANCE AT THIS TIME[.] THANK YOU, MICHAEL MEEHAN."

The Postal Service thereupon processed Meehan's waiver of all life insurance coverage, and sent him, on or about March 3, 1988, a Notification of Personnel Action which confirmed his waiver. In response to this notification, Meehan did nothing: he neither contacted the Postal Service to vacate his waiver, nor did he, or any representative on his behalf, ever file a grievance regarding such waiver.[3]

After Meehan's death, plaintiff filed a claim for death benefits. On or about April 28, 1989, the Metropolitan Life Insurance Company's Office of Federal Employees' Group Life Insurance denied the claim.

On January 29, 1990, plaintiff commenced this action for monies due under the life insurance policy, claiming that Meehan never properly waived his rights to free life insurance under sections 535.23–.24 of the Employee and Labor Relations Manual ("ELRM"), which concern the issuance of "supplementary waiver."[4]

---

1. Plaintiff's complaint also alleges 28 U.S.C. §§ 1332 and 1338 as bases for subject matter jurisdiction. These sections, which, respectively, concern diversity of citizenship and patent/copyright/trademark cases, clearly have no bearing on jurisdiction in this case and plaintiff does not argue their applicability in his Memorandum of Law in Support of Their Motion for Summary Judgment.

2. Meehan affixed his signature to box 5 which states: "I want no insurance coverage at all. I understand that any insurance I have will stop at the end of the pay period in which my employing office receives this waiver and that I cannot get Basic Life Insurance unless I (1) wait at least one year after I sign this form, (2) am under age 50 when I apply, AND (3) give satis-

factory medical evidence of insurability. I understand that I cannot get any optional insurance unless I first have Basic Life."

3. Meehan was a member of the Mail Handlers Union when he worked for the United States Postal Service.

4. Section 535.23 of the ELRM provides as follows:

*Employee statement.* The installation makes absolutely certain that an employee understands the consequence of the waiver. A statement signed by the employee, together with SF 2817 waiving insurance coverage, is filed as a permanent record in the employee's official personnel folder.

Defendants assert that Meehan's waiver was complete upon his filing of the SF 2817 and, though not required for an effective waiver, his printed statement on the January 13, 1988 memorandum satisfies the requirement of sections 534.23–.24. In addition, they contend that the ELRM is part of the 1987–1990 collective bargaining Agreement between the Postal Service and the Mail Handlers Union ("Agreement"), and any alleged breach of its provisions is subject to arbitration procedures which are part of the Agreement and therefore not covered by FEGLI. Because Meehan failed to file a grievance or seek arbitration, they contend that this Court lacks subject matter jurisdiction over the claim.

## II. DISCUSSION

### A. SUBJECT MATTER JURISDICTION

When parties present several grounds for dismissal, the Court must first examine grounds that allege a lack of jurisdiction. It is well-established that both the United States and its agencies are immune from suit absent an express waiver by Congress of their sovereign immunity. *Block v. North Dakota, ex. rel. Board of University and School Lands*, 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983); *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Moreover, waivers are strictly construed "and exceptions thereto are not to be lightly implied." *Block*, 461 U.S. at 287, 103 S.Ct. at 1820.

#### 1. *Jurisdiction of Claims for Life Insurance Under FEGLI*

Plaintiff asserts that the necessary waiver in this case is found in 5 U.S.C. § 8715 of FEGLI,[5] and that defendants' alleged failure to follow the requirements of Sections 535.23–.24 of the ELRM is a denial of

a federal right provided by FEGLI. He notes that in *Barnes v. United States*, 307 F.2d 655 (D.C.Cir.1962), the Court of Appeals for the District of Columbia held that a federal court has subject matter jurisdiction under FEGLI to hear a suit brought by a widow who alleged that the government breached its duty by failing to inform the decedent of his right to convert his insurance policy to a private policy at the time he left government service. *See also National Treasury Employees Union v. Campbell*, 589 F.2d 669 (D.C.Cir.1978) (finding consent to suit under 5 U.S.C. § 8912, which contains language identical to § 8715); *McDade v. Hampton*, 469 F.2d 142 (D.C.Cir.1972) (finding jurisdiction under FEGLI without discussion).

However, in *Robinson v. United States*, 8 Cl.Ct. 343 (1985), *aff'd*, 806 F.2d 249 (Fed.Cir.1986), the Court of Claims held that even if the United States breaches a duty under provisions of the Federal Personnel Manual to timely provide forms to an employee who retired from government employment and expressed a desire to convert her FEGLI policy to a private policy, "the United States could not be held answerable in money damages for the breach of such a duty." *Id.* at 345; *see also Barnes*, 307 F.2d at 670 (jurisdiction lacking under FEGLI when the government has not failed " 'in the performance of any duty arising under the Act' ") (Burger, J., dissenting).

#### 2. *Instant Action is Breach of a Collective Bargaining Agreement*

Defendants contend that plaintiff's complaint fails to allege a breach of any duty arising under FEGLI. As a preliminary matter, they note that plaintiff is incorrect in his claim that FEGLI grants Meehan free basic life insurance. FEGLI provides

---

Section 535.24 provides in relevant part as follows:
> *Sample Statement.* I have been informed of my right to receive basic life insurance coverage of at least $10,000 based on my employment with the U.S. Postal Service. I fully understand that this basic life insurance coverage is available without cost to me. While I have had the benefits of this free coverage

explained to me, I still elect not to accept this free life insurance and have so indicated on Part 5 of SF 2817.

5. 5 U.S.C. § 8715 provides: "The district courts of the United States have original jurisdiction, concurrent with the Court of Claims, of a civil action or claim against the United States founded on this chapter."

that "during each period in which an employee is insured under a policy [pursuant to] this title, there shall be withheld from the employee's pay a share of the cost of the group life insurance...." 5 U.S.C. § 8707(a). Thus, FEGLI does not provide any federal employee with a right to free life insurance benefits. Postal workers who elect coverage receive free basic life insurance solely as a result of the terms of their Agreement.

Defendants next note that the ELRM is part of the Agreement. *See United States Postal Service v. American Postal Workers Union, AFL–CIO*, 922 F.2d 256, 259 n. 2 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 297, 116 L.Ed.2d 241 (1991); *Hamilton v. United States Postal Service*, 746 F.2d 1325, 1327 (8th Cir.1984). Thus, they contend, plaintiff's claim that defendants breached sections 535.23–.24 of the ELRM is, essentially, an allegation that they breached the Agreement.[6] *See* Plaintiff's Complaint at Paragraph 6 (claim for breach of contract).

### 3. *Plaintiff Required to Use Grievance/Arbitration Procedures*

Defendants note that the Agreement contains a broad provision for Grievance–Arbitration procedures to resolve any alleged contract violation. Article 15 of the Agreement defines grievance as follows:

as a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment, a grievance shall include, but is not limited to, the complaint of an employee or of the Union which involves the interpretation, application of, or compliance with the provision of this Agreement or any local Memorandum of Understanding not in conflict with this Agreement.

There is a strong federal policy in favor of private dispute resolution. In order to promote this policy, "there is a presumption of arbitrability that is particularly applicable when the governing labor agreement contains a broad arbitration clause." *McKee v. Transco Products, Inc.*, 874 F.2d 83, 87 (2d Cir.1989) (citing *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986)). "Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must ... come within the scope of the grievance and arbitration provisions of the collective agreement." *United Steelworkers of Am. v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

In addition, defendants note that Article 18 of the Agreement contains an absolute no-strike clause. In *United Steelworkers*, the Supreme Court stated that when a collective bargaining agreement contains an absolute no-strike clause, then everything management does is subject to the agreement. *Id.* at 583, 80 S.Ct. at 1353.

Furthermore, in *American Postal Workers Union, AFL–CIO v. United States Postal Service*, 755 F.Supp. 1076 (D.D.C. 1989), after examining this very Agreement, the court found that the grievance and arbitration procedures were "broadly worded" and that "disputes or complaints involving the interpretation of *any article* of the collective bargaining agreement fall within the scope of the parties' grievance and arbitration procedure." *Id.* at 1077 (emphasis added). Therefore, defendants conclude, Meehan was required by the Agreement to institute grievance procedures and seek arbitration if he believed his rights under sections 235.23–.24 of the ELRM were violated.

---

**6.** The Court notes that section 531.1 of the ELRM provides the following general rule regarding life insurance:

The office of Personnel Management (OPM) administers the Federal Employees Group Life Insurance (FEGLI) program. The FEGLI law policies and regulations issued by OPM including those governing eligibility and bene-

fits are controlling *in the event of conflict with these instructions.* (emphasis added)

However, plaintiff fails to cite anything in the ELRM or in the Agreement which conflicts with FEGLI. Moreover, there is nothing in the Agreement which excludes matters concerning life insurance from arbitration procedures.

#### 4. *Exhaustion of Grievance/Arbitration Procedures Is Requisite to Suit*

In 39 U.S.C. § 1208(b), federal courts are granted jurisdiction to hear suits for alleged violations of contracts between the Postal Service and a union or unions representing postal workers. Such actions are decided under the same federal common law principles as are applicable to suits brought against non-governmental entities for breach of collective bargaining agreements under section 301(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 185(a). *See, e.g., United States Postal Service v. American Postal Workers Union, AFL–CIO*, 893 F.2d 1117, 1119–20 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 67, 112 L.Ed.2d 42 (1990); *American Postal Workers Union, AFL–CIO v. United States Postal Service*, 766 F.2d 715, 720 (2d Cir.1985), *cert. denied*, 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986).

Before an employee can bring suit against his employer for breach of a collective bargaining agreement under section 301 of the NLRA, he is required to show either that he "attempt[ed] to exhaust any grievance or arbitration remedies provided in the collective-bargaining agreement" or that the union breached its duty of fair representation. *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 163–65, 103 S.Ct. 2281, 2289–91, 76 L.Ed.2d 476 (1983); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965); *Young v. U.S. Postal Service*, 907 F.2d 305, 307 (2d Cir.1990).

As stated above, in the instant case, after Meehan received notification that confirmed his waiver of life insurance, he failed to file a grievance or take any other step to vacate his waiver. Thus, Meehan clearly failed to exhaust his procedural remedies. *See Republic Steel*, 379 U.S. at 652–53, 85 S.Ct. at 616–17 ("It cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so").

Moreover, plaintiff does not allege that the Mail Handlers Union breached its duty of fair representation. *See Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967) ("A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith"). Indeed, Lawrence Hill, a representative of the Mail Handlers Union, stated in deposition testimony that if Meehan had sought to grieve the issue, the union would have taken the necessary steps to file such a grievance. *See* Hill Deposition attached to Ausubel Declaration at Exhibit C, pp. 94–97. Therefore, defendants contend, this Court lacks subject matter jurisdiction to hear this case.

■ This Court finds defendants' argument persuasive. Considering the policy of strictly construing waivers of sovereign immunity, when plaintiff's claim for life insurance is based entirely on an alleged breach of a collective bargaining agreement that is subject to grievance procedures and arbitration, this Court holds that it does not have jurisdiction under FEGLI. Accordingly, this action is dismissed for lack of subject matter jurisdiction.

### B. STATUTE OF LIMITATIONS

■ Assuming, *arguendo*, that plaintiff has satisfied the jurisdictional prerequisites, the instant action is nevertheless barred by the applicable statute of limitations. The Supreme Court has held that actions for breach of collective bargaining agreements are subject to a six month statute of limitation. *DelCostello*, 462 U.S. at 172, 103 S.Ct. at 2294. The statute begins to run "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir.1983), *cert. denied*, 464 U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214 (1984). In the instant case, Meehan was sent a confirmation of his waiver on March 3, 1988. Thus,

his time to commence suit would have ended by September 3, 1988. However, although Meehan worked for the Postal Service until March 12, 1989, he never filed a grievance regarding his waiver of life insurance benefits or about the alleged violation of subchapter 535.23–24 of the ELRM. Thus, the action is time barred.

## C. WAIVER

■ Again assuming, *arguendo*, that the jurisdictional prerequisites were satisfied and this action is not time barred, this Court finds that Meehan waived his free life insurance. As stated above, at the December 7, 1987 orientation meeting, Meehan was informed that the Postal Service provided free basic life insurance. However, after incorrectly filling out one SF 2817, he completed another in which he waived basic life insurance. In addition, on the bottom of the January 13, 1988 memorandum, he printed: "NO LIFE INSURANCE AT THIS TIME[.] THANK YOU, MICHAEL MEEHAN."

Plaintiff argues that this writing does not satisfy the requirements of sections 535.23–24 of the ELRM for a "supplemental waiver." However, section 535.22 explicitly states that "[a] waiver becomes effective at the end of the pay period in which the SF 2817 is received by the employing office." It makes no reference to sections 535.23–.24. Thus, Meehan's waiver would have been effective even if he never completed any "supplemental waiver." Moreover, section 535.24 provides only a sample statement; it does not require specific language. Accordingly, under the facts in this case, this Court finds that Meehan's writing satisfied the requirements of section 535.23–.24 for a "supplemental waiver" and that Meehan knowingly and properly waived his right to free basic life insurance. *See McDade*, 469 F.2d at 143–44 (waiver of life insurance effective even when the government withheld payments for coverage for five and one-half pay periods, (until the decedent's death) without objection from the decedent).

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure is granted and plaintiff's motion is denied.

SO ORDERED.